UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VANDA PHARMACEUTICALS INC.,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) )  Case No. 24-cv-2514 (APM) |
| **FOOD AND DRUG ADMINISTRATION, et al.,** | ) ) ) |
| **Defendants.** | ) ) ) |

## MEMORANDUM OPINION AND ORDER

**I.**

Plaintiff Vanda Pharmaceuticals Inc. ("Vanda") has developed a new drug "tradipitant" to treat symptoms of gastroparesis in adults. Compl., ECF No. 1, ¶¶ 6, 24; Pl.'s Mot. for TRO & Prelim. Inj., ECF No. 4 [hereinafter Pl.'s Mot.], Pl.'s Mem. in Supp. of Pl.'s Mot., ECF No. 4-1 [hereinafter Pl.'s Mem.], at 4.[1] Its application for tradipitant is currently under review by Defendant Food and Drug Administration ("FDA"). Pl.'s Mem. at 2–3. The agency intends to act on Vanda's new drug application ("NDA") by September 18, 2024. *Id*. at 3. Under its regulations, the FDA may take one of two actions: (1) approve the drug or (2) issue a complete response letter ("CRL"), which affords applicants an opportunity to provide additional information before the agency issues its final decision. Defs.' Opp'n to Pl.'s Mot., ECF No. 13 [hereinafter Defs.' Opp'n], at 3.

On September 4, 2024, Vanda moved to halt this review process through a preliminary injunction. Pl.'s Mot. It asserts that the FDA's proceedings violate the Appointments Clause

---

[1] Although Vanda's motion is styled in the alternative as a motion for summary judgment, the court treats it as one only for preliminary injunctive relief.

because they are being overseen by Dr. Kathleen Donohue, who is not a properly appointed officer. Pl.'s Mem. at 9–18. For the reasons that follow, the court denies Vanda's motion.[2]

## II.

A preliminary injunction is a "drastic and extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant "must establish" (1) "that [it] is likely to succeed on the merits;" (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in [its] favor;" and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20.[3]

## III.

### A.

The court begins with the irreparable injury prong. *Shaw v. Austin*, 539 F. Supp. 3d 169, 182 (D.D.C. 2021) (describing irreparable harm as the "*sine qua non* for obtaining a preliminary injunction") (internal quotation marks and citation omitted). Vanda claims three injuries: (1) the "here-and-now" constitutional injury of being subjected to an unconstitutional administrative

---

[2] Vanda's motion became ripe on September 15, 2024, and the court held oral argument on September 17, 2024. Due to the limited time before the FDA's decision on Vanda's application, this opinion is necessarily abbreviated.

[3] As a threshold matter, the FDA argues that this matter is not ripe for the court's consideration because it depends on a contingent future event: the identity of the agency's signatory. Defs.' Opp'n at 7–16. The court finds that, at this stage, Vanda has established that the matter is ripe. Ripeness has both constitutional and prudential components. The former requires a showing of injury, which Vanda has established insofar as it asserts an ongoing harm from being subjected to an unconstitutional review process (assuming, for these purposes, that Vanda's claim is meritorious). *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996) (requiring only a "threatened injury" to establish standing). Further, the case is fit for review because it presents a pure legal issue. *See Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003). Where, as here, "neither the agency nor the court have a significant interest in postponing review," the hardship prong "is largely irrelevant." *Elec. Power Supply Ass'n v. FERC*, 391 F.3d 1255, 1263 (D.C. Cir. 2004).

process, (2) reputational harm, and (3) diminishment of patent rights. Pl.'s Mem. at 18–23. None of these satisfy the stringent standard of irreparable harm.

*First*, Vanda claims that "[t]he harm caused by being subjected to an unlawful proceeding is inherently irreparable." Pl.'s Mem. at 18. This argument stems from *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), where the Supreme Court considered whether a special review scheme set forth in two statutes—the Securities Exchange Act and the Federal Trade Commission Act—could displace a district court's federal-question jurisdiction to hear "far-reaching" constitutional claims challenging the agency's authority to proceed with an enforcement action before an administrative law judge. *Id.* at 180–81, 185. In that context, the Court recognized that "being subjected" to an "unconstitutional agency authority" presents a "here-and-now" injury, regardless of how the administrative proceeding is ultimately resolved. *Id.* at 191. *Axon*, however, "had nothing to do with whether and when courts should grant preliminary injunctive relief." *Meta Platforms, Inc. v. FTC*, No. 23-cv-3562 (RDM), 2024 WL 1121424, at *10 (D.D.C. Mar. 15, 2024). Vanda concedes as much, Pl.'s Mem. at 18; Pl.'s Reply, ECF No. 14 [hereinafter Pl.'s Reply], at 20, but claims that "the [Supreme] Court's language" nevertheless "confirms" that its purported injury "is literally 'impossible to remedy once the proceeding is over,'" Pl.'s Reply at 20 (quoting *Axon*, 598 U.S. at 191).

The court disagrees. "[N]ot every [ ] 'here-and-now injury' rises to the level of gravity required to satisfy the irreparable injury prong of the preliminary injunction standard." *Meta Platforms, Inc.*, 2024 WL 1121424, at *9 (citing cases). Unlike the petitioner in *Axon*, Vanda does not challenge "the structure or [the] very existence" of the FDA's administrative process. *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) (alteration in original) (quoting *Axon*, 598 U.S. at 188). Nor does

3

it complain about the FDA's "power generally." *Axon*, 598 U.S. at 193. Its claim is narrower: an Appointments Clause challenge, asserting only that the particular individual likely to review Vanda's NDA, Dr. Donahue, is not a properly appointed officer. Vanda seeks as relief not a complete suspension of the process, but instead a compelled "conven[ing] [of] an advisory committee for review of Vanda's NDA, subject to the review and decision of the Commissioner of Food and Drugs." Pl.'s Mot., Proposed Order, ECF No. 4-14, at 2. Thus, in its requested relief, Vanda acknowledges the constitutionality of the FDA's present authority, structure, and process to review its NDA. So, even if Vanda is presently suffering some type of "here-and-now" injury from an Appointments Clause violation, it is not so "great" or "certain" as to justify injunctive relief. *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). *See also Meta Platforms*, *Inc.*, 2024 WL 1121424, at *9 (observing that "if every action allegedly taken in excess of the agency's authority (whether couched in constitutional terms or not) was deemed irreparable . . . every appointments clause, commerce clause, non-delegation, major question, and separation of powers challenge [would turn] into a case requiring expedited resolution of whether the plaintiff is likely to succeed on the merits").

What's more, the harm caused by an Appointments Clause violation is far from irreparable. Ratification by a properly appointed official is a common, well-established cure for such a violation. *See Wilkes-Barre Hosp. Co., LLC v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) ("Our precedents establish that ratification can remedy a defect arising from the decision of 'an improperly appointed official . . . when . . . a properly appointed official has the power to conduct an independent evaluation of the merits and does so.'") (quoting *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117–21, 124 (D.C. Cir. 2015)); *Consumer Fin. Prot. Bureau v. Seila L. LLC*, 997 F.3d 837, 847 (9th Cir. 2021) ("[R]atification is available to cure both

Appointments Clause defects and structural, separation-of-powers defects."); *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 162 (2d Cir. 2021) ("We therefore decide that agency actions can be ratified[.]"); *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 603–05 (3d Cir. 2016) (concluding that subsequent ratification cured procedural error). Vanda fails to explain why ratification of a decision made by a non-officer on its NDA would not provide an adequate remedy and thus abate any harm.

*Second*, and *third*, Vanda argues that it "separate[ly] demonstrat[ed]" irreparable harm "in the form of delay and eroding patent rights," as well as "reputational injuries." Pl.'s Reply in Supp. of Pl.'s Mot, at 22. Put differently, Vanda says that because FDA approval is required before tradipitant can be sold, the term and value of the drug's patent will be reduced absent a preliminary injunction. Pl.'s Mem. at 21. And "an adverse decision" by the FDA "would significantly damage Vanda's business credibility," which "could jeopardize future business opportunities." *Id.* at 22.

These arguments also miss the mark. These feared injuries would stem not from the alleged unconstitutional review process, but from the non-approval of its NDA, which Vanda apparently believes is forthcoming. Thus, there is no causal connection between the alleged Appointments Clause violation and these additional claimed injuries. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) ("There must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined[.]" (citation omitted)). Moreover, an irreparable injury "must be both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted). At this stage, Vanda has offered only speculation, not actual evidence, as to its claimed property and reputational harms.

**B.**

Vanda also has not demonstrated that it is likely to succeed on the merits of its Appointments Clause challenge. Under the Appointments Clause, "Officers of the United States" must be appointed in one of two ways. U.S. Const. art. II, § 2, cl. 2. "[P]rincipal officers must be appointed by the President and confirmed by the Senate." *Intercollegiate Broad. Sys.*, 796 F.3d at 115. "Inferior" officers, on the other hand, may be appointed in the same manner as principal officers or, as relevant here, "Congress . . . may authorize . . . a department head to appoint an inferior officer." *Lucia v. SEC*, 585 U.S. 237, 245 n.3 (2018).[4]

In response to Vanda's contention that Dr. Donohue is not a properly appointed inferior officer, the FDA identified Dr. Nikolay Nikolov, Director of the Office of Immunology and Inflammation, Office of New Drugs, as an inferior officer appointed by the Secretary of Health and Human Services ("HHS"), who supervises Dr. Donohue's work and may be an alternative or additional signatory to the agency's response. Defs.' Opp'n at 9–10, 20; Decl. of Nikolay P. Nikolov, M.D., ECF No. 13-1, ¶¶ 1, 5 [hereinafter Nikolov Decl.]; Nikolov Decl., Ex. 1, ECF No. 13-2 (ratification and prospective appointment of Dr. Nikolov by the Secretary of HHS). Dr. Nikolov says he is "sufficiently knowledgeable of [Vanda's] application and review materials [*sic*] to take action on the application, or to co-sign or ratify an action taken by another signatory to the response, when the response is ready to be finalized." Nikolov Decl. ¶ 6. According to Vanda, Dr. Nikolov's involvement and signature would not solve the Appointments Clause problem. He, too, is not properly appointed, Vanda asserts, because Congress has not granted the Secretary of HHS *any* statutory authority to appoint inferior officers within the FDA. Pl.'s Reply at 1. The court, at this stage, cannot agree.

---

[4] The court assumes, for the purposes of this motion, that Vanda is correct that approving an NDA, or declining to do so, is an act that must be performed by a properly appointed "Officer of the United States."

The Reorganization Plan No. 1 of 1953 ("1953 Plan") established HHS as a Department with responsibility for, among other things, health and social security.[5] Section 6 of the 1953 Plan provides that "[t]he Secretary [of HHS] may from time to time make such provisions as the Secretary deems appropriate authorizing the performance of any of the functions of the Secretary by any other officer, or by any agency or employee, of the Department." 5 U.S.C. app., 1953 Plan, § 6, at 66 ("Section 6").

Section 6 contains multiple textual clues that Congress intended to grant the Secretary of HHS the power to appoint inferior officers. For one, Congress used the noun "provisions" to capture the kinds of measures the Secretary could adopt in furtherance of his responsibilities. Dictionaries from that period define "provision" to mean, among other things, "[t]hat which is provided or prepared; preparation." *Provision*, Webster's New Collegiate Dictionary 681 (2d ed. 1953). Thus, Congress gave the Secretary a broad grant of power to make "preparations." And that term encompasses making "preparations" for "authorizing the performance of any" of the Secretary's "functions."

Congress's use of the term "authorize" is likewise important. Contemporaneous dictionaries define the term to mean "clothe with authority or legal power; to commission; as, *authorized* agents"; "[t]o empower; permit; as, *authorize* him to act"; "[t]o establish by authority, as by precedent; sanction." *Authorize*, Webster's New Collegiate Dictionary 60 (2d ed. 1953); *see also Authorize*, Black's Law Dictionary 169 (4th ed. 1951) ("To empower; to give a right or authority to act"; "To clothe with authority, warrant, or legal power"). The term "authorize" clearly

---

[5] The Department of Health, Education, and Welfare ("HEW") is the actual Department established under the 1953 Plan, but HEW became HHS in 1979 after the creation of a separate Department of Education. *See* United States Department of Health, Education, and Welfare, Wikipedia, https://simple.wikipedia.org/wiki/United_States_Department_of_Health,_Education,_and_Welfare (last visited September 17, 2024). So, for simplicity, the court refers here to the relevant Department as HHS.

signals that the Secretary could legally empower others to carry out the functions of his office on his behalf.  Whom did Congress expect the Secretary would task with these functions?  "[A]ny other *officer*," a position that Congress expressly distinguished from an "employee" of the Department.  5 U.S.C. app., 1953 Plan, § 6, at 66 (emphasis added).  Congress therefore contemplated that the Secretary would transfer responsibilities to other "officers" to do the Department's work.  And Congress did not proscribe the "provisions," or "preparations," the Secretary could make to empower others but instead gave him discretion.  He could make those provisions he "deems appropriate." *Id.*  Taking these terms together, the appointment of inferior officers fits comfortably within the Secretary's broad delegation power conferred under Section 6.

Circuit courts have read similar text from that era to confer appointment authority.  Section 2 of the Reorganization Plan No. 6 of 1950 ("1950 Plan") provides that "[t]he Secretary of Labor may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of Labor of any function of the Secretary . . . ."  5 U.S.C. app., 1950 Plan, § 2, at 47.  Both the Ninth and Fifth Circuits have said that this provision "explicitly authorizes a subdelegation of authority by the Secretary of Labor." *Donovan v. Nat'l Bank of Alaska*, 696 F.2d 678, 681 (9th Cir. 1983); *Willy v. Admin. Review Bd.*, 423 F.3d 483, 492 (5th Cir. 2005) (quoting *Donovan*, 696 F. 2d at 681); *see also Varnadore v. Sec'y of Lab.*, 141 F.3d 625, 631 (6th Cir. 1998) (holding that the Secretary of Labor had the authority to appoint inferior officers without expressly considering Section 2 of the 1950 Plan).  That Congress included nearly identical language three years later in Section 6 compels reading Section 6 in the same way as the earlier parallel provision.  *See Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 857 (D.C. Cir. 2006) ("There is a presumption that Congress uses the same term consistently in different statutes.") (collecting cases).

Vanda takes issue with this interpretation. It argues that "[c]onspicuously absent from Section 6 of the 1953 reorganization plan is any mention of the 'appointment' of inferior officers." Pl.'s Reply at 8 (quoting *Edmond v. United States*, 520 U.S. 651, 657 (1997)) (cleaned up). But no "magic words are required," *Al Bahlul v. United States*, 967 F.3d 858, 874 (D.C. Cir. 2020), so the absence of the word "appointment" is not dispositive. Vanda also notes that other sections of the 1953 Plan do use the word "appoint," which suggests that Congress meant *not* to convey appointment authority in Section 6. Pl.'s Reply at 8–9. But Congress's use of the term "appoint" in these other sections was for a different purpose: the appointment of new *principal* officers. Sections 1, 2, and 4, respectively, established positions of Secretary, Under Secretary, two Assistant Secretaries, and the Commissioner of Social Security, all of whom were "to be appointed by the President by and with the advice and consent of the Senate." 5 U.S.C. app., 1953 Plan, §§ 1–2, 4, at 65–66. That Congress used the word "appoint" to describe the President's installation of principal officers does not mean that Congress meant to foreclose the Secretary of HHS from appointing inferior officers under Section 6.

Vanda dismisses the Fifth Circuit's decision in *Willy* because, based on "little analysis," the court in that case found "that generic delegation provisions actually vested appointment authority in the Secretary of Labor." Pl.'s Reply at 9. But that framing mischaracterizes *Willy*. The court there specifically considered Section 2 of the 1950 Plan and read it, as the Ninth Circuit had in *Donovan*, as explicitly granting subdelegation authority to the Secretary of Labor. *Willy*, 423 F.3d at 491–92. To be fair, the court also considered as relevant 5 U.S.C. § 301, which grants broad authority to Department heads to prescribe regulations. *See id.* But that additional citation does nothing to diminish the force of how those courts interpreted Section 2 to grant appointment powers. Vanda also suggests that *Willy*'s reasoning has been called into question by other courts.

9

Pl.'s Reply at 9 (citing *United States v. Janssen*, 73 M.J. 221 (U.S.C.A.A.F. 2014)).  But the sole case that it cites, *Janssen*, takes issue only with the Fifth Circuit's reading of § 301.  *See In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 658 n.44 (D.D.C. 2018) (observing that *Willy* and *Janssen* conflict in their understanding of whether § 301 is a proper source of appointment authority).  *Janssen* says nothing about Section 2 of the 1950 Plan, whose text is nearly identical to Section 6 of the 1953 Plan, which Congress would adopt three years later in reference to the Secretary of HHS.

Finally, Vanda's position, if accepted, would produce an absurd result.  It would mean that the FDA Commissioner would have to personally sign off on every decision on a drug application because, according to Vanda, that individual is the agency's sole properly appointed officer.  The court doubts that Congress intended to constrict the administration of the FDA's important work in that way.

## V.

The final two factors—the balance of equities and the public interest—merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As Vanda will not suffer irreparable injury absent an injunction and has not demonstrated a likelihood of success on the merits, the equities and public interest weigh against granting injunctive relief.

## VI.

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 4, is denied.

Dated: September 18, 2024

Amit P. Mehta
United States District Court Judge